UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MICHAEL BRIGHT-ASANTE,

                                            Plaintiff,

                        - against -

SAKS & COMPANY, INC.,
THEO CHRIST, &
LOCAL 1102 RETAIL, HOTEL, and
DEPARTMENT STORE UNION/UNITED
FOOD and COMMERCIAL WORKERS
INTERNATIONAL,

                                            Defendants.

**OPINION AND ORDER**

15 Civ. 5876 (ER)

Ramos, D.J.:

      Plaintiff Michael Bright-Asante brings this action against Saks & Company, Inc., the

Vice President of Human Resources, Theo Christ (together, "Saks"), and the Retail, Hotel, and

Department Store Union/United Food and Commercial Workers International Local 1102

("Local 1102") (all together, "Defendants") alleging, among other things, employment

discrimination.  Before the Court are three motions:  (1) Plaintiff's motion to amend the

Amended Complaint pursuant to Federal Rule of Civil Procedure 15(a); (2) Saks' motion for

sanctions pursuant to Federal Rule of Civil Procedure 11; and (3) Saks' motion to compel

arbitration and/or dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure

12(b)(6).[1]

---

[1] Defendant Local 1102 is represented by separate counsel and has not moved to dismiss Plaintiff's claims against it. However, Local 1102 has submitted a letter in opposition to Saks' motion to compel arbitration.  (Doc. 37)

For the reasons stated below, Plaintiff's motion to amend and Saks' motion for sanctions are DENIED and Saks' motion to compel arbitration and/or dismiss is DENIED in part and GRANTED in part.

## I.  **Factual and Procedural Background**[2]

Plaintiff is an African American man formerly employed as a sales associate in the women's shoe department at Saks Fifth Avenue (the "Store"), a department store in New York City.  Amended Complaint ("Am. Compl.") ¶ 10.  He is married and has young children.  *Id.* at ¶ 96.  Plaintiff is also a member of Local 1102.  *Id.* at ¶ 11.  In December 2013, Local 1102 and Saks entered into a binding collective bargaining agreement ("CBA").  The CBA provides, in pertinent part, that Saks possesses "all statutory and inherent management rights, power, and authority" and that its right to hire or suspend its salespeople was not limited by any provision in the CBA.  Rocco Decl. Ex. A, at 1.  It also contains a provision prohibiting discrimination against any employee on account of gender, race, or any other legally protected status.  *Id.* at 14 (Article 25. Non-Discrimination).

The CBA includes a three step grievance procedure to address a dispute or complaint arising between Local 1102 and Saks out of the CBA or "the interpretation thereof."  *Id.* at 12 (Article 21. Administration, Grievance & Arbitration Procedure).  Step 1 states that within twenty calendar days of an employee having a grievance, the employee or Local 1102 must

---

[2] The following facts are drawn from allegations contained in the Amended Complaint (Doc. 25), which the Court accepts as true for purposes of the instant motion.  *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).  The Court also takes judicial notice of the Collective Bargaining Agreement ("CBA") between Local 1102 and Saks and the September 15, 2014 email between Local 1102 and Saks because they are incorporated by reference in the Amended Complaint.  *See* Am. Compl. ¶¶ 11, 29; *see also* Declaration of Matthew P. Rocco, Esq. in Opposition ("Rocco Decl.") (Doc. 36) Exs. A & B.

submit the grievance to Saks in writing.  *Id.*  Saks must respond within twenty days (or "as soon thereafter as practicable").  Step 2 provides that if the grievance is not settled during the first step, it can be presented within twenty calendar days of Saks' answer, in writing to Defendant Christ, the Vice President of Human Resources at Saks.  *Id.*  This too must be answered by Saks within twenty calendar days.  Lastly, if the grievance is not settled during the second step, after twenty calendar days the grievance can be submitted to arbitration.  *Id.* at 13.  To properly comply with Step 3, the employee must make a written demand for arbitration.  *Id.*  Importantly, the antidiscrimination provision makes no reference to this grievance procedure.  Also, neither the grievance procedures nor the antidiscrimination provision address whether disputes arising under federal or state law are subject to arbitration.

In the summer of 2014, Saks became aware of fraudulent activity occurring at the Store and began an investigation of its sales associates.  Plaintiff alleges that at that time, the racial makeup of the salespersons at the Store was approximately fifty percent white and fifty percent minorities.  *Id.* at ¶ 48.  He claims, however, that Saks investigated only the non-white salespersons.  *Id.* at ¶ 49.  Through its investigation, Saks learned that sales associates were stealing merchandise from the Store by the unauthorized use of customers' credit cards.  On September 5, 2014, Plaintiff was arrested by law enforcement in connection with the investigation and charged with grand larceny and theft.  *Id.* at ¶ 13.  Four days later, on September 9, Christ sent Plaintiff a letter suspending him without pay "pending the legal outcome of [his] situation."  *Id.* at ¶ 14.  Plaintiff alleges that a white woman, who also worked in the Store and similarly sold merchandize to the same customer, was never investigated or suspended.  *Id.* at ¶¶ 56-57.

On September 15, 2014, Local 1102 sent Saks an email ("Step 1 Grievance") requesting Plaintiff's immediate reinstatement and back pay.  Rocco Decl. Ex. B.  Plaintiff claims that the Step 1 Grievance was not signed by him and did not comply with the CBA because it did not include "a written summary" of his complaint "and/or the contract provision alleged to have been violated."[3]  Am. Compl. ¶ 29.  He further claims that Saks did not respond within the requisite twenty-day period and that Local 1102 made no efforts to enforce the timeline.  *Id.* at ¶¶ 34, 35. Plaintiff contrasts his grievance process with that of a white salesperson.  Without providing further explanation or detail, he claims that during the time Local 1102 was unresponsive to him, it successfully grieved the suspension of a white salesperson.  *Id.* at ¶ 72.

Plaintiff claims that sometime after he was suspended from the Store, he filed an application for unemployment benefits with the New York State Unemployment Insurance Benefits Board.  Am. Compl. ¶ 86.  He alleges that Saks opposed his application in retaliation for filing the application, which resulted in an initial denial of his unemployment benefits.

On March 13, 2015, all of the criminal charges against Plaintiff were dismissed.  *Id.* at ¶ 19.  One week later, on March 20, Plaintiff sent a letter to Christ informing him that his case had been dismissed and attached a copy of the Certificate of Disposition.  *Id.* at ¶ 19.  Plaintiff also duly notified Local 1102.  *Id.* at ¶ 21.  Plaintiff claims that no one from Saks responded to his letter.  *Id.* at ¶ 20.  He also claims that no one from Local 1102 responded to a letter he sent on April 10, inquiring about his grievance and reinstatement.  *Id.* at ¶ 22.  Though Plaintiff notes that representatives of Local 1102 did inform him that a grievance had been filed, he never

---

[3] The CBA provides that the grievance "shall be signed by the grievant and the Shop Steward or [Local 1102] Representative, shall contain a written summary of the complaint and/or the contract provision alleged to have been violated and the remedy sought."  Rocco Decl. Ex. A, at 12.

received proof of the grievance or further updates regarding the grievance process until after he filed the instant action.  *Id.* at ¶¶ 23-27.

On July 27, 2015, Plaintiff filed the instant suit.[4]  (Doc. 1)  Plaintiff alleged that Saks unlawfully discriminated and retaliated against him and breached the CBA.  *Id.*  He also alleged that Local 1102 unlawfully discriminated against him and breached its duty of fair representation.  Approximately one month later, on August 21, 2015, Local 1102 submitted Plaintiff's grievance to arbitration.  Am. Compl. ¶ 41.  On September 28, 2015, the Court entered an Order of Automatic Referral to mediation.  (Doc. 16)  The mediation session was held on January 8, 2016, however the parties could not reach a resolution.  On February 9, 2016, Plaintiff requested a pre-motion conference to seek leave to amend the Complaint.  (Doc. 20)  The Court held the pre-motion conference and granted Plaintiff leave to file an amended complaint to include additional allegations against Local 1102.  Plaintiff filed the Amended Complaint on April 4, 2016.  (Doc. 25)  The Amended Complaint included additional factual allegations and a claim for constructive discharge against Saks.  Am. Compl. ¶¶ 94-98.  Shortly thereafter, on April 29, 2016, Saks sought leave to file a motion to dismiss the Amended Complaint and/or compel arbitration.  (Doc. 28)  After the pre-motion conference on May 19, 2016, the Court granted Saks leave to file the instant motion, which it filed on June 9, 2016.  (Doc. 32)

By letter dated August 11, 2016, Plaintiff informed the Court that the arbitration hearing had concluded and attached the Arbitrator's findings (the "Award"), dated July 29, 2016.

---

[4] Plaintiff claims that around the time he commenced the instant action, he secured employment as a flight attendant. Am. Compl. ¶ 82.  He asserts that instead of making more than $100,000 per year, as he did at Saks, he now makes only $23,000.  *Id.*

Arbitration Award (Doc. 40).  At the arbitration, Saks argued that its treatment[5] of Plaintiff was properly supported by evidence that showed Plaintiff engaging in fraudulent transactions. According to Catherine Richards, the Director of Investigations at Saks, on August 29, 2014, Plaintiff sold pairs of Louboutin and Givenchy shoes (totaling more than $6,000) by using the credit card account number of a customer who was not present at the Store on that day and who had not authorized the purchase.  *Id.* at 4.  Richards testified that a surveillance video – which was not viewed at the arbitration – showed Plaintiff making the transactions at two separate registers and giving the shoes to a woman who was not the owner of the credit card account.  *Id.* Local 1102 argued that Saks could not meet its burden of proof because the criminal charges against Plaintiff had been dropped, and Saks did not produce the individual whose card was allegedly used or the surveillance video showing Plaintiff's actions.

The Arbitrator found in favor of Saks and denied Local 1102's grievance.  He relied on Richards' testimony regarding the video, stating that Richards' "unequivocal" identification of Plaintiff in the video established Plaintiff's involvement in the fraudulent transaction.  *Id.* at 6. The Arbitrator also highlighted (1) the absence of the true cardholder; (2) Plaintiff's use of two separate registers to complete the purchase, and (3) Plaintiff's giving the shoes to a woman that was not the true cardholder.  Lastly, the Arbitrator noted that there was no "plausible, benign reason" for Plaintiff's actions and that because Plaintiff did not attend the arbitration, "he obviously could not explain away what he did."  *Id.*

---

[5] Local 1102 and Saks disagreed as to whether Plaintiff's indefinite suspension was better characterized as a suspension or a discharge.  The Arbitrator found that the distinction "held no bearing on the outcome of [the] dispute" and instead framed the issue as Saks' "treatment" of Plaintiff.  Arbitration Award at 5 n.5.

In the August 11 letter attaching the Award, Plaintiff claimed that the issue addressed by the Arbitrator was not the issue that Local 1102 had originally submitted for arbitration and that he was not made aware of the "new stipulated issue" until after the Award had been issued. *Id.* The Court directed Defendants to respond to Plaintiff's letter and to advise the Court on the impact of the Award on the pending motion to dismiss.  (Doc. 41)  On October 10, 2016, in response to Plaintiff's letter, Saks and Local 1102 provided a summary of the Arbitrator's findings and emphasized that neither Plaintiff, nor his counsel, attended or participated in the arbitration.  (Docs. 42, 43)  Saks further claimed that its motion was unaffected by the Arbitrator's findings and the Award.  The next day, on October 11, Plaintiff filed a letter with the Court claiming that Defendants were in collusion because both Saks and Local 1102 knew that the video on which the Arbitrator relied did not support the Arbitrator's conclusions.  (Doc. 44)  Plaintiff claimed that Richards "deliberately misled the Arbitrator and perjured herself" by claiming that it was not Saks' policy to allow customers to make purchases without physically showing their credit card.  He also attached a copy of Saks' policy allowing for transactions without the Store credit card so long as additional steps are taken to confirm the identification of the customer.  On October 12, Plaintiff requested a pre-motion conference to vacate the Award or in the alternative seek leave to file an amended complaint to include a claim to vacate the Award.  (Doc. 45)

The Court held the pre-motion conference on November 2, 2016.  At the conference, Plaintiff's counsel explained that Local 1102 had been unresponsive to Plaintiff's requests for information regarding his grievance and that he did not receive any information from Local 1102 until after he filed the instant action.  The Court cautioned Plaintiff that based on the facts presented at the conference, it was unlikely that Plaintiff's motion to amend would be granted.

*See* Transcript of 11/2/2016 Conference (Doc. 53) at 14:9-18.  Saks also informed the Court of

its intention to seek sanctions in the event that Plaintiff filed the motion to amend.  On November

7, 2016, Saks sent Plaintiff's counsel a letter giving notice of Saks' intention to file a Rule 11

motion in the event Plaintiff filed a motion amend.  Declaration of Wendy Johnson Lario in

Opposition ("Lario Decl.") (Doc. 59) Ex. B.  On November 30, 2016, Plaintiff filed the instant

motion to file a Second Amended Complaint.[6]  (Doc. 55)  Two weeks later, on December 14,

2016, Saks filed a cross-motion for sanctions.  (Doc. 57)

## II.  Legal Standards

### A.  Rule 15 Motion to Amend

Parties are entitled to amend their pleadings once, as a matter of course, within 21 days

after serving the pleading or, if a responsive pleading is required, within 21 days after service of

a responsive pleading or a Rule 12 motion.  Fed. R. Civ. P. 15(a)(1).  A party may not otherwise

amend its pleading without either the written consent of the opposing party or leave of the court.

Fed. R. Civ. P. 15(a)(2).  "The court should freely give leave when justice so requires."  *Id.*  The

Supreme Court has held that it would be an abuse of discretion, "inconsistent with the spirit of

the Federal Rules," for a district court to deny leave without some justification, "such as undue

delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies

by amendments previously allowed, undue prejudice to the opposing party by virtue of

allowance of the amendment, futility of amendment, etc."  *Foman v. Davis*, 371 U.S. 178, 182

(1962).  Leave to amend may be denied on the basis of futility if the proposed claims would not

withstand a Rule 12(b)(6) motion to dismiss.  *Dougherty v. Town of N. Hempstead Bd. of Zoning*

---

[6] Due to a filing error, Plaintiff was directed to refile his motion and accompanying documents.  Plaintiff properly
refiled the documents on January 9, 2017.  (Docs. 65-67)

*Appeals*, 282 F.3d 83, 88 (2d Cir. 2002). The party opposing the amendment has the burden of

establishing its futility. *Blaskiewicz v. Cnty. of Suffolk*, 29 F. Supp. 2d 134, 137-38 (E.D.N.Y.

1998) (citing *Harrison v. NBD Inc.*, 990 F. Supp. 179, 185 (E.D.N.Y. 1998)).

## B. Rule 12(b)(6) Motion to Dismiss

Under Rule 12(b)(6), a complaint may be dismissed for "failure to state a claim upon

which relief can be granted." Fed. R. Civ. P. 12(b)(6). When ruling on a motion to dismiss

pursuant to Rule 12(b)(6), the Court must accept all factual allegations in the complaint as true

and draw all reasonable inferences in the plaintiff's favor. *Koch v. Christie's Int'l PLC*, 699 F.3d

141, 145 (2d Cir. 2012). However, the Court is not required to credit "mere conclusory

statements" or "threadbare recitals of the elements of a cause of action." *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see also id.*

at 681 (citing *Twombly*, 550 U.S. at 551). "To survive a motion to dismiss, a complaint must

contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Id.* at

678 (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible "when the plaintiff pleads

factual content that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). If the plaintiff has not

"nudged [his] claims across the line from conceivable to plausible, [the] complaint must be

dismissed." *Twombly*, 550 U.S. at 570.

## III. Discussion

### A. Motion to Amend and/or Vacate the Award

Plaintiff seeks to vacate the Award or in the alternative, amend the Amended Complaint

to include a claim to vacate the Award. Corrected Memorandum of Law in Support of Plaintiff's

Motion ("Pl. Amend Memo") (Doc. 56).  The Federal Arbitration Act ("FAA") provides four

narrow circumstances under which an arbitration award may be vacated:

> (1) where the award was procured by corruption, fraud, or undue means; (2) where there was evident partiality or corruption in the arbitrators, or either of them; (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a).  In addition to the four statutory bases, a court may on rare occasion "vacate an

arbitration award if it finds a panel has acted in manifest disregard of the law."  *Dolan v. ARC

Mech. Corp.*, No. 11 Civ. 09691 (PAC), 2012 WL 4928908, at *2 (S.D.N.Y. Oct. 17, 2012)

(citing *Porzig v. Dresdner, Kleinwort, Benson, N. Am. LLC*, 497 F.3d 133, 139 (2d Cir. 2007)).

"Because the FAA supports a strong presumption in favor of enforcing arbitration awards, the

policy of the FAA requires that the award be enforced unless one of those grounds is

affirmatively shown to exist."  *Jock v. Sterling Jewelers Inc.*, 646 F.3d 113, 121 (2d Cir. 2011)

(internal quotation marks omitted).  The burden of proving a ground for vacating an award "rests

on the party who seeks to vacate it."  *Hakala v. Deutsche Bank AG*, No. 01 Civ. 3366 (MGC),

2004 WL 1057788, at *2 (S.D.N.Y. May 11, 2004).

Here, Plaintiff does not assert any of the grounds available for vacating the Award, and

instead claims that the Arbitrator misconstrued the facts and wrongly determined that he had

committed the fraudulent acts.  Declaration of Michael Bright-Asante (Doc. 66) ¶¶ 20-29.

However, an arbitrator's factual findings are generally not subject to judicial challenge.

*Westerbeke Corp. v. Daihatsu Motor Co.*, 304 F.3d 200, 214 (2d Cir. 2002) ("The arbitrator's

factual findings and contractual interpretation are not subject to judicial challenge, particularly

on our limited review of whether the arbitrator manifestly disregarded the law."). Accordingly, the Court cannot properly vacate the Award on this ground.

In his pre-motion letter and at the pre-motion conference, Plaintiff argued that the Award was procured by undue means or fraud. Plaintiff's Pre-Motion Conference Letter dated 10/11/2016 (Doc. 44). However, Plaintiff does not address this argument in his motion papers, and has thus abandoned the argument. *See Arma v. Buyseasons, Inc.*, 591 F. Supp. 2d 637, 642–43 (S.D.N.Y. 2008) ("[T]he Court notes that Plaintiffs did not respond to Defendants' arguments in support of their motion to dismiss . . . and therefore the Court may deem the claim abandoned."). Nevertheless, even assuming that this claim is properly before the Court, the Court finds that vacatur of the Award is not warranted. As an initial matter, neither Plaintiff, nor his counsel, attended the arbitration. Permitting Plaintiff to oppose the Award based on a claim that it did not assert – but easily could have asserted – at the arbitration, would offend the general principle that "a party cannot remain silent, raising no objection during the course of the arbitration proceedings, and when an award adverse to him has been handed down complain of a situation of which he had knowledge from the first." *Mandarin Oriental Mgmt., (USA) Inc. v. N.Y. Hotel & Motel Trades Council, AFL-CIO*, No. 13 Civ. 3984 (RMB), 2014 WL 345211, at *8 (S.D.N.Y. Jan. 31, 2014) (internal quotation marks omitted). Moreover, Plaintiff's claim that Richards committed perjury when she asserted that Saks did not allow its customers to make purchases without physically showing their credit card is also insufficient to establish fraud. *See Duffy v. Legal Aid Soc.*, No. 12 Civ. 2152 (PAC), 2013 WL 541521, at *4 (S.D.N.Y. Feb. 12, 2013) ("The mere fact that a witness's testimony is contrary to Petitioner's version of events does not establish that the award was procured by fraud."). Accordingly, the Court finds that Plaintiff is unable to meet the standard for vacating an arbitration award and thus both his motion

11

to vacate the Award and his motion to amend in order to include claims to vacate the Award is denied.

**B.  <u>Sanctions</u>**

Saks seeks sanctions pursuant to Federal Rule of Civil Procedure 11 for Plaintiff's filing of the motion to amend claiming that Plaintiff's motion was frivolous.  Brief in Opposition to Plaintiff's Motion to File a Second Amended Complaint ("SAKS Amend Opp.") (Doc. 58) at 7-8.  Rule 11 states that the court may impose sanctions "[i]f, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated . . . ."  Fed. R. Civ. P. 11(c)(1); *see also Ipcon Collections LLC v. Costco Wholesale Corp.*, 698 F.3d 58, 63 (2d Cir. 2012) (stating that "sanctions under Rule 11 are discretionary, not mandatory").  The Second Circuit has made clear that Rule 11 sanctions should be granted with caution, applied only when "a particular allegation is utterly lacking in support."  *In re Highgate Equities, Ltd.*, 279 F.3d 148, 154 (2d Cir. 2002) (quoting *O'Brien v. Alexander*, 101 F.3d 1479, 1489 (S.D.N.Y. 1996)); *Kiobel v. Milson*, 592 F.3d 78, 81 (2d Cir. 2010); (*see also Storey v. Cello Holdings, L.L.C.*, 347 F.3d 370, 387 (2d Cir. 2003) ("When reviewing Rule 11 sanctions, however, we nevertheless need to ensure that any [sanctions] decision is made with restraint.") (internal quotation marks and citation omitted)).

"A pleading, motion or other paper violates Rule 11 either when it has been interposed for any improper purpose, or where, after reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading is well grounded in fact and is warranted by existing law or good faith argument for the extension, modification or reversal of existing law."  *Robledo v. Bond No. 9*, 965 F. Supp. 2d 470, 477-78 (S.D.N.Y. 2013) (quoting *Kropelnicki v. Siegel*, 290 F.3d 118, 131 (2d Cir. 2002) (internal citations and quotations omitted)).  When deciding

whether to grant Rule 11 sanctions the Court applies an objective standard of reasonableness, *W.K. Webster & Co. v. Am. President Lines, Ltd.*, 32 F.3d 665, 670 (2d Cir. 1994), and looks to, among other factors, whether the party acted in bad faith; whether they relied on a direct falsehood; and whether the claim was "utterly lacking in support." *New V & J Produce Corp. v. NYCCaterers Inc.*, No. 13 Civ. 4861 (ER), 2014 WL 5026157, at *7 (S.D.N.Y. Sept. 29, 2014).

Here, Plaintiff's desire to vacate the Award is grounded in the belief that Local 1102 did not fairly represent his interests.  Though Plaintiff does not assert a particular statutory ground for vacating the Award, he claims that Local 1102's "perfunctory" handling of his grievance falls within the ambit of the *DelCostello*, *Hines*, and *Vaca* line of cases excusing a plaintiff's requirement to exhaust arbitration remedies before filing suit.[7]  Pl. Amend. Memo at 4-5.  In, *DelCostello*, the more recent decision of the three, the Supreme Court reiterated that a plaintiff is ordinarily required to exhaust any grievance or arbitration remedy provided in a CBA before bringing suit.  However, it found that "this rule works an unacceptable injustice when the union representing the employee in the grievance/arbitration procedure acts in such a discriminatory, dishonest, arbitrary, or perfunctory fashion as to breach its duty of fair representation." *DelCostello*, 462 U.S. at 164.

In the Amended Complaint, Plaintiff claims that between March 2015 – when the criminal charges were dropped – and the filing of the Complaint in July, Local 1102 never responded to his letters or numerous phone calls requesting information regarding his grievance. Am. Compl. ¶¶ 17, 18, 23-27.  Pursuant to the CBA, prior to arbitration, Local 1102 was

---

[7] The cases to which Plaintiff refers are three Supreme Court cases:  *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151 (1983); *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554 (1976); and *Vaca v. Sipes*, 386 U.S. 171 (1967).

required to attempt to address Plaintiff's concerns by communicating with management at the Store.  Yet, Plaintiff claims that throughout the entire grievance process, Local 1102 made no effort to understand his concerns.  It was not until the matter was scheduled for arbitration, the last step in the grievance process, that Local 1102 is alleged to have sought out Plaintiff for the first time.  At that point, Plaintiff refused to cooperate with the union because he "believed that Local 1102 was not genuinely interested in fighting for [him]."  Pl. Amend. Memo at 3.  Therefore, although the Court finds that Plaintiff's motion is wanting, the motion is not wholly without basis as it relies on caselaw that provides relief to employees who are purportedly being ill-represented by their unions and he has alleged that the union ignored his requests for information for months, and then failed to get his input when they filed the grievance.  Accordingly, Saks' motion for sanctions is denied.

### C.  <u>Plaintiff's Statutory Claims Are Not Subject to Mandatory Arbitration</u>

Plaintiff alleges four causes of action against Saks:  (1) race discrimination in violation of 42 U.S.C. § 1981 ("Section 1981") and New York City Human Rights Law ("NYCHRL"); (2) breach of the CBA; (3) retaliation in violation of New York Labor Law ("NYLL"); and (4) constructive discharge in violation of the NYCHRL.[8]  Saks asserts that these claims are subject to mandatory arbitration pursuant to the CBA.  Defendants' Memorandum of Law in Support of Motion ("Saks Memo") (Doc. 34) at 10.  In opposition, Local 1102 argues that the CBA does not

---

[8] Though Plaintiff brings this action pursuant to Section 1981, LMRA § 301, NYCHRL, and NYLL, Plaintiff does not cite to a particular statute as the basis for his discrimination and constructive discharge claims.  In its motion, Saks assumes that Plaintiff's discrimination claim was made pursuant to both Section 1981 and the NYCHRL and that his constructive discharge claim was asserted pursuant to the NYCHRL.

mandate arbitration of Plaintiff's statutory claims.[9]   Local 1102 Letter Brief in Opposition to

Saks' Motion to Compel Arbitration ("Local 1102 Opp.") (Doc. 37), at 5-6.

The Federal Arbitration Act ("FAA") requires that a contract provision to arbitrate

disputes arising out of the contract "shall be valid, irrevocable, and enforceable, save upon such

grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  The FAA

represents "a strong federal policy favoring arbitration as an alternative means of dispute

resolution."  *JLM Indus., Inc. v. Stolt–Nielsen SA,* 387 F.3d 163, 171 (2d Cir. 2004) (citation

omitted); *see also Ross v. Am. Express Co.,* 547 F.3d 137, 143 (2d Cir. 2008).   However, when a

party seeks to compel arbitration of federal statutory claims, courts must first "consider whether

Congress intended those claims to be nonarbitrable."   *JLM Industries*, 387 F.3d at 169.   Where

statutory claims are susceptible to arbitration, the next inquiry is whether "the parties intended to

arbitrate such individual claims," as indicated by the terms of their agreement.  *Alderman v. 21

Club Inc.*, 733 F. Supp. 2d 461, 469 (S.D.N.Y. 2010).   In a collective bargaining agreement, the

intention by the parties to arbitrate statutory claims must be "clear and unmistakable."   *Id.* at ¶¶

469-70 (citing *14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 250-51 (2009).   In other words, the

CBA must either (1) include an arbitration clause whereby the employee agrees to submit  all

federal and state causes of action arising out of his employment to arbitration, or (2) list specific

statutes that are subject to a general agreement to arbitrate disputes.  *See Rogers v. N.Y. Univ.*,

220 F.3d 73, 76 (2d Cir. 2000) *abrogated on other grounds by Pyett*, 556 U.S. 247; *see also*

---

[9] In his opposition papers, Plaintiff states that Local 1102 would address the argument regarding whether his statutory claims were subject to arbitration.  Pl. Opp. at 12.  Plaintiff reserved the right to "supplement or proffer a different argument after reviewing" Local 1102's submission, but did not submit supplemental materials.

*McLean v. Garage Mgmt. Corp.*, No. 10 Civ. 3950 (DLC), 2011 WL 1143003, at *5 (S.D.N.Y. Mar. 29, 2011).

As an initial matter, the Court finds that Plaintiff's claim of breach of the CBA is preempted by Section 301 of the Labor Management Relations Act and is thus subject to arbitration. *See Int'l Bhd. of Elec. Workers, AFL-CIO v. Hechler*, 481 U.S. 851, 857 (1987) ("The ordinary § 301 case is a contract claim in which a party to the collective-bargaining agreement expressly asserts that a provision of the agreement has been violated.") (citing *Teamsters v. Lucas Flour Co.,* 369 U.S. 95, 104 (1962)); *Sadowski v. Tech. Career Insts., Inc.,* 1998 WL 642461 (Table), at *1 (2d Cir. 1998) (summary order) ("Section 301 of the LMRA preempts—in addition to claims alleging a breach of a collective bargaining agreement—claims that, although sounding in tort, are inextricably intertwined with consideration of the terms of the collective bargaining agreement."). Indeed, prior to this decision, Local 1102 grieved Saks' indefinite suspension of Plaintiff at an arbitration proceeding, in which the Arbitrator found that Saks' treatment of Plaintiff did not violate the CBA. Accordingly, Saks' motion to compel arbitration of Plaintiff's breach of contract claim is granted, to the extent it has not been rendered moot by the Award.

The Court further finds that the CBA does not mandate arbitration of Plaintiff's federal and state discrimination claims. It is well-settled that Section 1981, NYCHRL, and NYLL claims may be made subject to arbitration. *See Lawrence v. Sol G. Atlas Realty Co.*, 841 F.3d 81, 83 (2d Cir. 2016) ("Claims under Section 1981, Title VII, the NYSHRL, the FLSA, and NYLL may be made subject to arbitration."). However, here, it is not "clear and unmistakable" that the parties intended to arbitrate Plaintiff's statutory claims. First, it is unclear whether the CBA actually mandates arbitration. The CBA states that "[t]he parties shall make earnest efforts

16

to adjust any complaints, grievances or disputes arising under [the CBA] . . . before the dispute *shall* be referred for arbitration."  Rocco Decl. Ex. A, at 12 (emphasis added).  However, the CBA also states that the Union or Saks "may" submit an unsettled grievance to arbitration as the final step of the grievance procedure.  *Id.*  Second, the CBA's grievance procedures are broadly stated and do not include any mention of federal or state claims or list any particular statutes subject to the arbitration provision.  Third, the antidiscrimination provision, itself, does not state that arbitration is required to resolve discrimination disputes.  Accordingly, the Court finds that arbitration of Plaintiff's statutory claims is not required by the CBA.  *See Fernandez v. Windmill Distrib. Co.*, 159 F. Supp. 3d 351, 361 (S.D.N.Y. 2016) (finding that CBA did not mandate arbitration for statutory employment discrimination claims because antidiscrimination provision did not specify that arbitration was required); *Shipkevich v. Staten Island Univ. Hosp.*, No. 08 Civ. 1008 (FB), 2009 WL 1706590, at *2 (E.D.N.Y. June 16, 2009) (finding that CBA did not mandate arbitration of plaintiff's claims because nowhere in the CBA was "there an explicit statement that [statutory] claims are subject to mandatory arbitration").  Accordingly, Saks' motion to compel arbitration is denied.

## D.  Motion to Dismiss

Plaintiff alleges that both Saks and Christ discriminated against him "on the basis of his race in the making and enforcement of a contract."  Am. Compl. at ¶ 60.  He also claims that his indefinite suspension without pay amounts to a constructive discharge.[10]  *Id.* at ¶ 98.

---

[10]  Though Saks argues that Plaintiff's Section 1981 claim should be subject to mandatory arbitration, it does not move to dismiss Plaintiff's claim in its 12(b)(6) motion.  Accordingly, the Court will not determine whether Plaintiff sufficiently alleged his Section 1981 claim at this time.

i.   **Race Discrimination**

To state a claim for discrimination under the NYCHRL, Plaintiff must show "differential treatment" of any degree because of a discriminatory motive.  *See Makinen v. City of N.Y.*, 167 F. Supp. 3d 472, 483 (S.D.N.Y. 2016) ("[T]o establish liability under the NYCHRL, 'the plaintiff need only show differential treatment—that she is treated 'less well'—because of a discriminatory intent.'") (quoting *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 110 (2d Cir. 2013)).  Unlike the NYSHRL or many federal discrimination statutes, the NYCHRL "does not require either materially adverse employment actions or severe and pervasive conduct."  *Mihalik*, 715 F.3d at 114.  Nevertheless, a plaintiff must still "plead facts sufficient to support an inference that he has been treated less well at least in part *because of*" a protected trait.  *Bell v. McRoberts Protective Agency, Inc.*, No. 15 Civ. 0963 (JPO), 2016 WL 7192083, at *5 (S.D.N.Y. Dec. 12, 2016) (internal citations omitted).

Here, Plaintiff has failed to properly assert a claim for race discrimination under the NYCHRL.  In the Amended Complaint, Plaintiff alleges that he was discriminated against in the "making or enforcement of a contract."  Am. Compl. ¶ 60.  Though this language appears in Section 1981, no such language exists in the NYCHRL.  However, because the Court finds that it is possible that Plaintiff can cure this deficiency without prejudice to Defendants, Plaintiff is granted leave to amend his pleading.  Accordingly, Saks' motion to dismiss Plaintiff's race discrimination claim is granted without prejudice.

ii.   **Constructive Discharge**

The Court finds that Plaintiff has sufficiently stated a claim for constructive discharge. Generally, to assert a constructive discharge claim, a plaintiff must show that "rather than

18

discharging him directly, [his employer] intentionally create[d] a work atmosphere so intolerable that he [was] forced to quit involuntarily."  *Pryor v. Jaffe & Asher, LLP*, 992 F. Supp. 2d 252, 261 (S.D.N.Y. 2014) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 151-152 (2d Cir. 2003)).  Work conditions are "intolerable" if they are so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign.  *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 73 (2d Cir. 2000).  The court's inquiry is an objective one.

Saks challenges Plaintiff's constructive discharge claim on the basis that he failed to allege that he was subjected to a hostile work environment.  Saks Memo at 9.  In support of its claim, Saks cites to a number of cases in which courts have found that a plaintiff's failure to plead a hostile work environment resulted in the dismissal of his constructive discharge claim. *See e.g.*, *Day v. N.Y. City Dep't of Consumer Affairs*, No. 10 Civ. 4888 (RWS), 2016 WL 1070843, at *8 (S.D.N.Y. Mar. 15, 2016) ("[T]he existence of a hostile work environment is a 'necessary predicate' to a constructive discharge case."); *White v. N.Y. State Dept of Corr. Servs. & Cmty. Supervision*, No. 14 Civ 10271 (VB), 2016 WL 1028009, at *1 (S.D.N.Y. Mar. 14, 2016) ("[B]ecause the amended complaint does not plead a hostile work environment claim, plaintiff's constructive discharge claim necessarily fails as well.").  Saks' argument is unpersuasive.

As an initial matter, in all of the cases Saks cites, the plaintiff asserted both a hostile work environment and a constructive discharge claim based on the same set of facts.  This type of constructive discharge claim has been characterized as a "hostile-environment constructive discharge" claim and requires that a plaintiff sufficiently allege a hostile work environment in order to adequately allege a constructive discharge claim.  *See Pennsylvania State Police v. Suders*, 542 U.S. 129, 147 (2004) (describing a hostile-environment constructive discharge claim

as a "compound claim" requiring a plaintiff to allege both that the offending behavior was so severe or pervasive that it created an "abusive working environment" and that the environment was so intolerable that a reasonable person would have felt compelled to resign).  Here, however, the basis for Plaintiff's constructive discharge claim is not a hostile or abusive work environment, but rather his indefinite suspension without pay.

Courts have found that a drastic change in employment status or responsibilities can amount to a constructive discharge.  Specifically, a "demotion, particularly one that is accompanied by a significant loss of salary, prestige or responsibilities, or is otherwise 'humiliating,' may also, on its own, give rise to a constructive discharge claim."  *Bader v. Special Metals Corp.*, 985 F. Supp. 2d 291, 310 (N.D.N.Y. 2013) (citing *Suders,* 542 U.S. at 133); *see also Dean v. Westchester County Dist. Attorney's Office,* 119 F. Supp. 2d 424, 431 (S.D.N.Y. 2000) ("A demotion with a reduction in pay and loss of employee benefits, when accompanied by evidence of malicious intent, can establish constructive discharge."); *Halbrook v. Reichhold Chemicals, Inc.*, 735 F. Supp. 121, 126 (S.D.N.Y. 1990) ("[E]vidence of a reduction in job responsibilities to the point where an employee has nothing meaningful to do with her time can lead to an inference of constructive discharge.").

Here, Plaintiff has pled sufficient facts to support his constructive discharge claim. Plaintiff does more than merely allege that he was demoted or that his salary and responsibilities were significantly reduced.  He claims his indefinite suspension without pay for approximately ten months beginning on September 9, 2014, with no indication that he would ever be called back, was tantamount to termination.  Am. Compl. ¶¶ 17, 19.  Even after the criminal charges were dropped against him in March 2015, he remained indefinitely suspended for approximately four months and was forced to find another job.  There is no question that a reasonable employee

20

in Plaintiff's shoes would have felt compelled to seek other employment.  *See e.g.*, *Timothy v. Our Lady of Mercy Med. Ctr.*, No. 03 Civ. 3556 (RCC), 2004 WL 503760, at *7 (S.D.N.Y. Mar. 12, 2004) (finding that plaintiff had sufficiently plead her constructive discharge claim by alleging that she had been passed over for positions, placed in inferior positions below her skill level, stripped of substantive responsibilities, removed from her office and "shunted to several inadequate work locations"); *see generally Suders,* 542 U.S. at 134 (holding constructive discharge may be shown "if the plaintiff quits in reasonable response to an employer-sanctioned adverse action officially changing her employment status or situation, for example, a humiliating demotion, extreme cut in pay, or transfer to a position in which she would face unbearable working conditions").

Moreover, Plaintiff alleges that a white saleswoman, who similarly sold merchandise to the same customer, was never investigated or suspended.  The Court finds that these allegations are sufficient to survive a motion to dismiss.  Accordingly, Saks' motion to dismiss Plaintiff's constructive discharge claim is denied.

### iii.    **Retaliation**

Plaintiff claims that Saks retaliated against him in violation of Section 215 of NYLL by opposing his application for unemployment benefits resulting in his benefits being "initially withheld and denied."  Am. Compl. ¶¶ 91-92.  Saks asserts that because it had an obligation to submit facts related to Plaintiff's unemployment application, its opposition did not constitute retaliation, but rather compliance with New York's request for information.  Saks Memo at 8.

Section 215 prohibits an employer or his agent from discharging, penalizing, or in any other manner discriminating against any employee "because such employee has caused to be

21

instituted a proceeding under or related to this chapter."  N.Y. Lab. Law § 215(1)(a)(iii).  To

establish a *prima facie* claim under Section 215, a plaintiff must demonstrates that "while

employed by the defendant, he made a complaint about the employer's violation of the law and,

as a result, was terminated or otherwise penalized, discriminated against, or subjected to an

adverse employment action."  *Paz v. Piedra*, No. 90 Civ. 3977 (LAK), 2012 WL 121103, at *10

(S.D.N.Y. Jan. 12, 2012) (internal quotations omitted).  "Courts in this District have held that

mere opposition to a former employee's application for unemployment insurance benefits,

particularly when the employee ultimately receives benefits, does not rise to the level of an

adverse employment action."  *Battacharia v. Pernod Ricard USA, LLC*, No. 13 Civ. 7222 (NSR),

2015 WL 4879204, at *11 (S.D.N.Y. Aug. 13, 2015) (listing cases).

　　　Here, Plaintiff has not alleged sufficient facts to allow the Court to infer that Saks

retaliated against him by opposing his unemployment benefits application.  Plaintiff claims that

Saks opposed his unemployment benefits application on the ground that he had committed a

crime against Saks.  Am. Compl. ¶ 87.  In conclusory fashion, he assigns a retaliatory motive to

Saks' opposition because he maintains that he did not commit a crime.  However, Saks' filing of

an opposition explaining its reasons for suspending Plaintiff – without more – is not retaliatory.

*See e.g.*, *Whalley v. Reliance Grp. Holdings, Inc.*, No. 97 Civ. 4018 (VM), 2001 WL 55726, at

*12 (S.D.N.Y. Jan. 22, 2001) (noting that since plaintiff initiated the unemployment benefits

process, opposition by defendant was its "right as a former employer, not retaliatory in nature");

*see also Abbondanzo v. Health Mgmt. Sys., Inc.*, No. 00 Civ. 4353 (LMM), 2001 WL 1297808,

at *8 (S.D.N.Y. Oct. 25, 2001), *aff'd*, 36 F. App'x 3 (2d Cir. 2002) ("Plaintiff provides no

evidence to show that defendant's decision to contest plaintiff's benefits claim was anything less

than standard practice following a termination under the circumstances."). Accordingly, Saks'
motion to dismiss Plaintiff's retaliation claim is granted.

## IV. Conclusion

For the reasons set forth above, Plaintiff's motion to file a second amended complaint or
vacate the Award and Saks' motion for sanctions is DENIED. Saks' motion to compel
arbitration and/or dismiss is DENIED in part and GRANTED in part as follows:

- Saks' motion to compel arbitration of Plaintiff's breach of contract claim is
  GRANTED.

- Saks' motion to compel arbitration of his statutory discrimination claims is
  GRANTED without prejudice.

- Saks' motion to dismiss Plaintiff's constructive discharge claim is DENIED.

- Saks' motion to dismiss Plaintiff's race discrimination and retaliation claims
  pursuant to the NYCHRL is GRANTED.

The Clerk of Court is respectfully directed to terminate the motions, Docs. 32, 57, 65.

It is SO ORDERED.


Dated:    March 9, 2017
          New York, New York

                                                    _____
                                                    Edgardo Ramos, U.S.D.J.